# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JIMMY PRESLEY HODGE,** | : |
| Petitioner | : |
| | : CIVIL ACTION NO. 3:16-0259 |
| v. | : |
| | : (Judge Mannion) |
| Warden, DAVID J. EBBERT | : |
| Respondent | : |

## MEMORANDUM

Jimmy Presley Hodge, an inmate confined in the United States Penitentiary, Lewisburg, Pennsylvania (USP-Lewisburg) filed the above captioned petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2241. (Doc. 1, petition). He challenges Incident Report No. 2682780, charging him with Conduct Disruptive to the Security of the Institution, a code 299 violation; Tampering with a Locking Device, a code 208 violation; Engaging in or Encouraging a Group Demonstration, a code 212 violation; and Refusing to Obey an Order of any Staff Member, a code 307 violation. (Doc. 6-1 at 8, Incident Report). Specifically, Hodge claims "due process violations; decision not based on preponderance of facts; excessive sanctions imposed; and conflicting evidence (i.e. video of incident). (Doc. 1, petition).

The petition is ripe for disposition and, for the reasons that follow, will be denied.

I.  **<u>Background</u>**

On February 13, 2015 at approximately 5:00 p.m., Lieutenant B. Shirk delivered Incident Report No. 2682780 to Hodge. (Doc. 6-1 at 8, Incident Report). The incident report reads as follows:

> On February 13, 2015 at approximately 10:07 a.m., Inmate Hodge, Jimmy #87420-008, had barricaded himself in B-119. This inmate was unresponsive to staff directive to remove the covering of his window and remove the objects placed in front of his food slot. This inmate could not be observed or approached safely by staff, and refused all staff directives. This inmate was one of 36 inmates involved in this group demonstration that resulted in an emergency response to contain the situation. This inmate was removed from his cell after chemical agents and less lethal munitions were deployed into the cell.

<u>Id</u>. On February 16, 2015, Petitioner appeared before the Unit Discipline Committee ("UDC"). (<u>See</u> <u>Id</u>., Committee Action). Petitioner made the following statement: "no one gave me a copy of my shot and I want the range video." <u>Id</u>. Due to the reporting requirements, the UDC referred the charge to the Discipline Hearing Officer ("DHO"), recommending "to change negative behavior, UDC recommends that the DHO apply all appropriate sanctions." <u>Id</u>. During the UDC hearing, staff member, B. Tharp, informed Hodge of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (<u>Id</u>. at 11, Inmate Rights at Discipline Hearing). Petitioner, however, refused to sign the form. <u>Id</u>.

2

Also on February 15, 2015, Hodge was provided with a "Notice of Discipline Hearing before the (DHO)" form. (Id. at 10). Hodge did not request any witnesses, but requested to be represented by staff member, C. Berkoski. Id. He also refused to sign this form. Id.

On February 19, 2015, Petitioner appeared for a hearing before DHO, B. Chambers. (Doc. 6-1 at 13-19, DHO Report). During the DHO hearing, "Inmate Hodge acknowledged he understood his rights before the DHO, however, alleged he was not prepared to proceed with the hearing. Hodge alleged he never received a copy of the incident report and consequently further alleged he was not prepared to defend himself against the charges. Id. Inmate Hodge stated he discussed this case in advance of the hearing with his staff representative, Mr. Berkoski. Hodge stated the only specific request he made of his staff representative was to review the video footage of the B-1 range, recorded on the date of the incident, 2-13-2015, in proximity to the time of the incident. Inmate Hodge stated Mr. Berkoski complied with this request. Hodge stated Mr. Berkoski informed him (Hodge) that he (Mr. Berkoski) believes the video footage shows staff made ample attempts to get the attention of inmates Hodge and Branon inside cell B-119. Hodge stated he does not believe that staff knocked on the door for two or three minutes prior

to using force. Inmate Hodge presented a handwritten document for the DHO to consider in his defense. This handwritten statement is titled "Statement Jimmy Hodge, 87420-008, Timothy Roberts, #12342-032" and is approximately 1¾ pages in length." Id. This handwritten statement is summarized as follows:

> Hodge begins, alleging he "was assaulted by BOP staff on 2-13-2015 for peacefully asking to speak with a captain." Hodge alleges he did not disobey any staff directives or break any BOP policies. Hodge states he has not seen any written claims against him, nor has he been advised of his rights, or been asked for a statement by any investigator. Hodge states "the only thing I know is Counselor Tharp appeared at my door on 2-16-2015 to tell me I was being UDC'd." Hodge alleges he "was completely unprepared for a statement, to call witnesses or anything." Hodge states he has a due process right to fight these accusations and be informed of what he's being charged with. Hodge states on 2-16-2015, he requested Mr. Tharp (during the UDC) to preserve video footage of B-1 range as witness to the incident that staff immediately came in and used excessive force to assault, abuse and batter inmates when I only asked to see a Captain or a Lieutenant considering the wrongful use of force used on James Lee, #31268-034." Hodge states "we are being denied access to the Administrative Remedy Process and no one from the Administration could come talk to anyone." Hodge states "everyone peacefully requested to talk to a Captain, Lieutenant, or Warden." Hodge states "at no time was there any violence displayed at anyone and threats and aggressive behavior were not used by anyone but BOP staff." Hodge states "we have no redress to wrongs being committed and crimes being committed against inmates by staff at USP-Lewisburg." Hodge states he wants video of the use of force against him to prove he was never given any directives by staff, did not block any security devices, and was "immediately assaulted with cannons, bombs, chemical

4

agents, ... despite multiple pleas to stop assaulting me." Hodge states "my whole body is black and blue and I cannot get medical attention." Hodge states "my due process and human rights are being trampled by staff and I am one of many." Hodge concludes, stating "I request immediate dismissal of this incident report due to due process violations, lack of evidence, and false reports being filed by BOP staff."

Id. In addition to his handwritten statement, inmate Hodge presented the following verbal testimony during his hearing:

> Inmate Hodge testified that he is denying committing any prohibited act in this case, however, reiterated his contention he never received a copy of the incident report. The DHO notes Sections 14, 15, and 16 of the incident report document delivery of the report to Hodge on 2-13-2015 at 5:00 PM. The DHO further noted the fact that Hodge presented a detailed handwritten statement in defense of the charges is a compelling indication he did in fact receive a copy of the incident report as documented in Sections 14, 15, and 16. Inmate Hodge acknowledged, in response to the questions posed by the DHO, he "is aware of what the charges are, because I wrote a written statement." Hodge testified "the use of force by staff in this case was not justified, all we did was ask to speak to the Captain. James Lee was assaulted earlier that morning by staff for refusing to speak to the Captain alone. We all refused to take our lunch trays, and told the staff we all wanted to speak to the Captain. Staff didn't follow proper protocol. When they use force like that, they are supposed to film the event on a hand-held camera. That never happened."

Id.

In addition to the Incident Report and Investigation, the DHO considered the following documentary evidence: (1) Memoranda of D. Dowkus, L.

Bidelspach, A. Scott, J. Ordonez, T. Johnson, M. Saylor, B. Taggart, S. Argueta, J. Shouey and Ry. Fisher, dated 2-13-2015; (2) Bureau of Prisons Health Services Clinical Encounter for inmate HODGE, Jimmy #87420-008, dated 2-13-2015; (3) Video footage of the B-1 range, recorded on the date of the incident, 2-13-2015, in proximity to the time of the incident as documented in Sections 5 and 11 of the incident report; (4) handwritten statement from inmate HODGE, Jimmy #87420-008, submitted in his defense. (Id. at 15). The specific evidence relied on to support the findings was as follows:

> The DHO finds inmate Hodge committed the prohibited acts of Interfering with Security Devices and Engaging in a Group Demonstration, Codes 208 and 212. This finding is based on the eyewitness written account of the reporting officer, which indicates on 02-13-2015 at approximately 10:07 a.m., inmate HODGE, Jimmy #87420-008 had barricaded himself in B-119. Inmate Hodge was unresponsive to staff directives to remove the covering from his window and move objects placed in front of his food slot in the cell door. Inmate Hodge could not be observed or approached safely by staff and refused all staff orders. Inmate Hodge was one of 36 inmates involved in a group demonstration that resulted in an emergency response to contain the situation. Inmate Hodge was removed from his cell after chemical agents and less lethal munitions were deployed into the cell.

Id. After detailing the contents of memoranda submitted by the officers who were involved, and Plaintiff's handwritten statement and testimony, the DHO gave the greater weight of the evidence in this case to the eyewitness written account of the reporting officer, the memoranda of Argueta, Taggart, Dowkus,

6

Bidelspach, Scott, Ordonez, T. Johnson, and Saylor, and the video footage of the B-1 range, recorded on the date of the incident, 2-13-2015, in proximity to the time of the incident as documented in Sections 5 and 11 of the incident report, requested by inmate Hodge as evidence in this case. Id.

The DHO further concluded:

> The DHO has considered as evidence in this case the handwritten statement and verbal testimony of inmate Hodge, in which he denied committing any prohibited act in this case. The DHO considers this evidence to be less credible, thereby giving it lesser weight than that to which the greater weight is given in this case, for the following reasons. First, there were two staff eyewitnesses in addition to the reporting officer who directly observed cell B-119, in which inmates Hodge, #87420-008 and Branon, #78653-098, were housed, and that the inmates had the cell door window covered and the cell door barricaded, and were unresponsive to staff orders to uncover their cell door window, remove the barricade material, and submit to hand restraints. Moreover, Hodge's handwritten statement and verbal testimony indicating "*the use of force by staff in this case was not justified, all **we** did was ask to speak to the Captain. James Lee was "assaulted" earlier that morning by staff for refusing to speak to the Captain alone. **We all refused to take our lunch trays, and told the staff we wanted to speak to the Captain**"* is compelling evidence the inmates did, in fact, cover their cell door windows, barricade their cell doors with mattresses and bedding material, and were unresponsive to staff orders to uncover their cell door windows, remove the barricade material, and submit to hand restraints, as a result of all of the inmates involved engaging in a group demonstration. Finally, the video footage of the B-1 range, recorded on the date of the incident, 2-13-2015, in proximity to the time of the incident as documented in Sections 5 and 11 of the incident report, requested by Hodge as evidence in this case, also critically detracts from the credibility of his testimony in which he

7

alleged he was not involved in the incident and was "taking a shit" at the time staff arrived at his cell door. As documented earlier in this report, the DHO notes that staff stood outside his cell door (B-119) while Lieutenant Dowkus knocked on the cell door and spoke toward the cell for in excess of two minutes, prior to chemical agents being introduced into the cell. The DHO consider this video evidence to be a clear indication the cell door window was covered, the cell door was barricaded, and neither Hodge nor Branon responded to staff orders to remove these items from the cell door, as opposed to evidence Hodge had the cell door window covered, as he was allegedly engaged in a bowel movement at the time staff arrived at his cell door.

Id. (emphasis in original).

The DHO sanctioned Hodge to thirty (30) days disciplinary segregation; loss of twenty seven (27) days Good Conduct Time; nine (9) months loss of telephone, commissary, emailing and visiting privileges. The DHO documented his reasons for the sanctions given as follows:

> Interfering With or Tampering With Security Devices, specifically barricading a cell door, covering the cell door windows, and failing to respond to staff orders to remove these materials, in a correctional institution inherently jeopardizes the security and good order of the institution. The rationale for the sanctions imposed in this case, therefore, is to punish the inmate for his misconduct, which is viewed as having an adverse effect on the security and orderly operation of the institution, as well as to deter future misconduct. Disciplinary segregation is imposed as punishment for the misconduct. Disallowed Good Conduct Time is imposed to demonstrate that engaging in misconduct will prolong inmate Hodge's period of incarceration. Loss of commissary, email, telephone and visiting privileges are imposed to demonstrate that engaging in misconduct will result in the loss of pleasurable privileges while incarcerated.

> Engaging in Group Demonstration in a correctional institution inherently jeopardizes the security and good order of the institution. In this particular incident, Hodge's actions contributed to the disruption of the orderly operation of multiple Special Management Units for several hours and required a substantial number of staff to be redirected from their normal duties to bring the incident to closure, thereby disrupting the orderly operation of the institution as a whole. The rationale for the sanctions imposed in this case, therefore, is to punish the inmate for his misconduct, which is viewed as having an adverse effect on the security and orderly operation of the institution, as well as to deter future misconduct. Disciplinary segregation is imposed as punishment for the misconduct. Disallowed Good Conduct Time is imposed to demonstrate that engaging in misconduct will prolong Hodge's period of incarceration. Loss of commissary, e-mail, telephone and visiting privileges are imposed to demonstrate that engaging in misconduct will result in the loss of pleasurable privileges while incarcerated. Loss of each of these privileges for a protracted period of time is warranted, based on the handwritten statement and verbal testimony presented by inmate Hodge during the hearing, which clearly indicate Hodge presented himself as a spokesman or leader in relation to the incident. The DHO has further concluded that Hodge's failure to comply with staff directive to uncover his cell door window, remove the barricade material, and submit to hand restraints, as his cell was the first one approached by staff, emboldened other inmates on the B-1 range, encouraging them to engage in similar behaviors. Finally, DHO notes that the group demonstration initiated by Hodge eventually spread to a totally separate housing unit, causing additional critical security concerns for staff at the time of the incident.

Id. Hodge was advised of his appeal rights at the conclusion of the hearing.

Id.

**II. Discussion**

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are

10

involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons has enacted specific procedures for disciplinary proceedings. 28 C.F.R. §541.1, et seq. Under these procedures, a staff member charges a prisoner with committing a prohibited act by issuing an incident report. 28 C.F.R. §541.5(a). The incident report ordinarily must be issued within 24 hours of the time the staff member became aware of the prisoner's involvement in the incident. Id. The incident is then investigated. Id. at §541.5(b).

After the incident is investigated, the UDC reviews the incident report and takes one of the following actions: 1) finds that the prisoner committed the prohibited act charged and/or a similar prohibited act as reflected in the

11

incident report; 2) finds that the prisoner did not commit the prohibited act charged; or 3) refers the incident report to the DHO for further review. Id. at §541.7(a). Prohibited acts are separated into four categories based on severity: Greatest, High, Moderate, and Low. Id. at §541.3(a). If a prisoner is charged with a prohibited act in the Greatest or High category, the UDC automatically refers the incident report to the DHO for further review. Id. at §541.7(a)(4).

Under the regulations, when an incident report is referred to the DHO, a disciplinary hearing is conducted in accordance with the procedures set forth at 28 C.F.R. §541.8. The prisoner is entitled to notice of the charges at least 24 hours before the hearing. Id. at §541.8(c). The prisoner is entitled to appear at the hearing and is entitled to staff representation at the hearing. Id. at §541.8(d) & (e). The prisoner is entitled to make a statement and to present documentary evidence. Id. at §541.8(f). A prisoner may request to have witnesses appear at the hearing on his behalf, but the DHO may refuse to call requested witnesses if they are not reasonably available, if their presence would jeopardize institutional security, or if they would present repetitive evidence. Id. The DHO considers all evidence presented at the hearing. Id. The decision of the DHO must be based on at least some facts and, if there

is conflicting evidence, the decision must be based on the greater weight of the evidence. Id. Following the hearing, the DHO must provide a written report documenting that the prisoner was advised of his rights. Id. at §541.8(h). The report must document the evidence relied upon by the DHO, the findings of the DHO, the sanctions imposed by the DHO, and the reasons of the DHO for imposing those sanctions. Id.

In the instant case it is clear from the record that Hodge was afforded all of the required procedural rights set forth in Wolff. He received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Hodge selected Case Manager Berkoski as his staff representative and he met with Hodge prior to and appeared with him at the DHO hearing. Hodge requested that Mr. Berkoski review the range video of the incident, which he did.

Petitioner was then afforded an opportunity to make a statement, as well as submit a written statement, which was documented in the DHO's report. He then received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision, and was notified of his right

to appeal.

Since Hodge was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. To the extent Hodge would allege there was not enough evidence to find he had committed the prohibited act, the decision of the DHO is entitled to considerable deference by a reviewing court and the decision should be upheld if there is "some evidence" to support the decision. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court held that the "some evidence" standard applies in addressing a state prisoner's due process claim. Id. at 456-57; see Thompson v. Owens, 889 F.2d 500, 501- 02 (3d Cir. 1989).

The United States Court of Appeals for the Third Circuit observed that the standard found in 28 C.F.R. §541.17(f) (1986) was more stringent than the "some evidence" standard. Henderson v. Carlson, 812 F.2d 874, 879 (3d Cir. 1987). The Court concluded that the "substantial evidence" standard in §541.17(f) (1986) was "clearly higher than any standard that the Constitution imposes on prison disciplinary proceedings." Id. In 2007, §541.17(f) was amended and no longer includes the "substantial evidence" standard. 28 C.F.R. §541.17(f) (2007). Section 541.17(f) (2007) now requires that a DHO's

decision be based on "some facts" and, if there is conflicting evidence, the decision is based on "the greater weight of the evidence." Id.

A DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts. Rather, under Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. This standard is satisfied where "there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. A disciplinary committee's resolution of factual disputes should not be subject to review where the standard in Hill is satisfied. Id.

In this case, the record clearly reveals the existence of both testimony offered and documentary evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. In addition to the statement provided by Petitioner, the DHO also considered the investigative report and staff memoranda submitted. In accordance with Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56. In this instance, there is "some evidence" to support the decision of the DHO.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. §541.3. Petitioner was found guilty of two

15

200-level, high severity level prohibited acts. Pursuant to 28 C.F.R. §541.3, the following are the sanctions available for 200-level offenses:

- A. Recommend parole date rescission or retardation.
- B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50%, or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
- B.1. Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
- C. Disciplinary segregation (up to 6 months)
- D. Make monetary restitution.
- E. Monetary fine.
- F. Loss of privileges (e.g. visiting, telephone, commissary, movies, recreation).
- G. Change housing (quarters).
- H. Remove from program and/or group activity.
- I. Loss of job
- J. Impound inmate's personal property.
- K. Confiscate contraband.
- L. Restrict to quarters.
- M. Extra duty.

Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied.

## III. Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. §2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a §2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264–65 (3d Cir. 2000)(en banc) (certificate of appealability not required to appeal from denial of §2241 petition), *abrogated on other grounds by* Gonzalez v. Thaler, ——U.S. ——, ——, 132 S.Ct. 641, 649, 181 L.Ed.2d 619 (2012); Kornegay v. Ebbert, 502 Fed.Appx. 131, 133 (3d Cir. 2012). Thus, the Court need not address this issue in the current action.

## IV. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus will be **DENIED**. A separate Order will be issued.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: February 5, 2018**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-0259-01.wpd